UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HELKA EXPRESS INTERNATIONAL, LTD., <br><br> Plaintiff, <br><br> v. <br><br> SHINE EXPRESS, INC., <br><br> Defendant. | No. 05 C 6432 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. Background

The parties to this action are freight forwarding companies who have transacted business with each other since November, 2000. Plaintiff Helka Express International, Ltd. ("Helka") has offices in Hong Kong and China and acted as Shine's overseas agent on transports of freight to and from Hong Kong or China. During the period of June, 2003 through January, 2005 Helka arranged for, moved, and delivered shipments of various cargo by air and sea at the request of Shine. Shine and Helka agreed to share equally in the profits of such arrangement, determined by the difference between the cost at which the freight service was purchased and paid for by Helka from an operating carrier, and the freight charges associated with Shine's shipping documents, which is the amount at which the service was resold to and paid by Shine's clients.

Helka alleges, and Shine concedes, that Shine owes Helka over $200,000 for Helka's execution of the transport of over 150 shipments on behalf of Shine. Helka claims that the

unpaid and short-paid invoices total $242,232.44.[1] In support, Helka attaches summaries of its invoices to its Local Rule 56.1 statement of facts as Exhibits "H" (outstanding invoices for air freight) and "I" (outstanding invoices for sea freight). Shine admits to receiving and retaining the invoices from Helka and concedes that it has not paid the full amount invoiced. The only factual dispute with regard to the overdue invoices is the exact amount at issue.

Shine claims that it owes Helka $211,583.65 for air freight charges, asserting the difference is due to Shine's complaints to Helka about non-performance, mishandling, partial loss, or being provided with the incorrect flight information. Specifically, in one email to Helka dated July 2, 2004, Shine complained about missing cartons, late shipments, and weight differences claimed by customers in connection with air freight bills. Shine's $211,583.65 figure is based on the affidavit of Arunesh Tripathi, who based his calculation of the overdue amount on Shine's own "record of all transactions involving air freight moved by Helka." (attached as Exhibit 1 to Tripathi's affidavit). Helka, however, seeks to recover on invoices for both *air and sea* freight charges. In addition, Shine's response brief contends that its internal records indicate a discrepancy of only $13,594.95. Though it is not clear how Shine arrived at this figure, it directly contradicts Tripathi's affidavit because the total amount claimed by Helka less the discrepancies claimed in the response equals $228,637.29. One possibility is that the amount calculated by Tripathi in fact excludes overdue invoices for sea freight. However, on the basis of

---

[1]Helka's complaint includes the amount owed as $244,143.76 and Helka's opening brief lists the amount owed as approximately $244,600. $242,232.44 is the amount listed in Helka's reply brief. The $1,911.32 difference between the figure cited in Helka's complaint and the one cited in its reply brief appears to be equal to the amount of claims deducted from payment by Shine which were not agreed to by Helka. Helka may have decided not to dispute the claims deducted but not agreed to by Helka, but this is not entirely clear on the basis of the papers before me.

the papers before me, I cannot conclude anything more than the wholly undisputed amount of money owed Helka is $211,583.65.

In addition to the disputed invoices, Shine submits that this case also involves a breach, by Helka, of both its fiduciary duties and obligation of good faith and fair dealing owed to Shine. Shine alleges that P.K. Ki, the President of Helka, orally agreed in 2000 that Helka "would not solicit Shine's customers or offer better rates to Shine's competitors, and that Helka would maintain confidentiality as to Shine's business transactions, client information, business volume, supplier information, and service and rate information." It is undisputed that no written agreements between Shine and Helka define the terms of their relationship. The parties also agree that they never referred to one another as "partners" or "joint ventures."

Shine has offices in New York, Chicago, and Los Angeles. According to Shine, Helka was Shine's "exclusive" overseas agent for all business Shine introduced Helka to involving shipments from China to the United States. Helka, based in Hong Kong, maintains that it is an overseas agent for a number of freight forwarders in the United States.

In December, 2004, Vice President Lloyd Burke of yet another freight forwarding company, American Cargo Express ("ACE"), contacted several persons at Helka to try to get a freight rate for one of its customers that was lower than the rate provided to the customer by "another forwarder." The emails detailing these negotiations contain no indication that Helka was aware of the identity of the other forwarder. The customer in question (Fashion Focus) was not a customer of ACE's, but rather a customer of Shine's, and the other forwarder referred to in the emails was Shine. Lloyd Burke sent copies of those emails to Mike Rizzo, who at the time was employed by Shine as Vice President of Operations and Development. The rates of "another

3

forwarder" quoted in Lloyd Burke's email to Helka were identical to the confidential rates that Helka had quoted to Shine for the air transport of freight from Qingdao, China to Los Angeles, California on behalf of Fashion Focus. Shine had no other business with Helka originating from Qingdao. On December 23, 2004, Helka provided Lloyd Burke with lower rates than the rates previously offered by Helka to Shine. The parties agree that it is not uncommon for freight forwarders to quote to their customers shipping prices below actual cost and that such a practice is often done in a very competitive marketplace in order to secure new business.

On December 27, 2004, Lloyd Burke sent the newly quoted rates to Mike Rizzo. Shortly thereafter, Fashion Focus stopped doing business with Shine. Rizzo left his employment at Shine on December 31, 2004 and began working for ACE.

Also in December of 2004, Shine's President, Ram Tiwari, telephoned P.K. Ki at Helka and advised Ki that Mike Rizzo would be leaving his employment at Shine. Tiwari says he requested Helka's cooperation in maintaining Shine's existing customers because he was aware of the emails that had circulated between Rizzo and ACE and between ACE and Helka. Tiwari testified in his affidavit that Ki replied that Shine and Helka would continue to support one another.

In January, 2005, Shine requested rates from Helka in connection with the transportation of cargo on behalf of Shine's customer, CST Berger. Helka provided the quote ten days after the request. According to Tiwari, in the past, Helka would have responded to such a request within a day. Tiwari later learned that CST Berger's cargo was being handled by ACE, and that Helka was serving as the overseas agent for that business.

4

In November, 2005 Helka filed a four-count complaint against Shine alleging breach of contract and seeking payment in the amount listed on Helka's invoices plus 2% pre-judgment and post-judgment interest and a declaratory judgment regarding the scope of any duties, obligations, and/or restrictions between the parties as to their commercial sales activities. Shine filed a two-count counterclaim alleging breach of fiduciary duty and tortious interference with prospective economic advantage. Helka now moves for summary judgment on the issues of breach of contract and associated damages for the unpaid invoices. At a November 21, 2008 status hearing, I gave Shine the opportunity to argue in its response brief that the issues raised in Shine's counterclaims are not separate and apart from the issue of the invoices such that I cannot rule on summary judgment with regard to the invoices alone. Shine filed its response on December 23, 2008, and Helka filed its reply brief on February 25, 2009.

**II.     Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir.2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a

genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**III.    Discussion**

The parties strongly disagree as to the nature of the agreement between them. Shine contends that on the basis of the alleged 2000 verbal agreement, a partnership or joint venture relationship existed between the parties. However, Shine has failed to show how the nature of any "agreement" between the parties is material to Helka's motion for summary judgment on its claim for damages as a result of Shine's breach of contract. Shine cannot and does not assert that the unpaid invoices are in any way related to Mike Rizzo leaving Shine to work at one of Shine's competitors and bringing customer accounts with him. A majority of the unpaid invoices predate either of the two alleged bad acts by Helka: Helka's providing of the lower price quotes to ACE in December, 2004 and the "unreasonable" ten-day delay by Helka in providing price quotes to Shine in January, 2005.

Accordingly, I am severing Helka's claim for breach of contract and associated damages from Shine's counterclaims. *See* Fed. R. Civ. P. 42(b). I grant Helka's motion for summary judgment in the amount to which there is no genuine issue: the wholly undisputed amount owed of $211,583.65. Thus, I grant summary judgment for the amount of $211,583.65. I deny summary judgment as to any remaining, disputed amount claimed by Helka. Helka can decide if it wants the $211,583.65 to be converted to a final judgment.

With regard to Helka's motion for summary judgment on the issue of interest, Helka claims it is owed 2% interest, compounded monthly, on the overdue amount. It is undisputed that each of the 156 unpaid and short-paid invoices stated: "INVOICE DUE ON

6

PRESENTATION: 2% INTEREST PER MONTH WILL BE CHARGED ON OVERDUE AMOUNT." Shine argues Helka is not entitled to any interest because in the prior course of dealing between the parties it was not customary to enforce this term. Nothing in the record indicates that prior to the filing of this lawsuit, Helka ever requested the payment of interest with respect to any invoice it issued to Shine.

The course of dealing provision of the Illinois Commercial Code applies to all commercial contracts. *American Protection Ins. Co. v. Airborne, Inc.*, 476 F.Supp.2d 985, 992 (N.D. Ill. 2007); 810 Ill. Comp. Stat. 5/1205. "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." 810 ILCS 5/1-205(1). A course of dealing between parties "give particular meaning to and supplement or qualify terms of an agreement." *Id.* at § 205(3). Section 1-205(4) instructs, "[t]he express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control." *Id.* at § 205(4); *see Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1102 (7th Cir. 1997) (where practice of sending out sales managers was inconsistent with the distributorship agreement, express agreement trumped course of dealing).

In a breach-of-contract action, evidence of the course of dealing is admissible in order to interpret ambiguities in the contract, but not to effectuate an alteration or contradiction of the contract's provisions. The invoices clearly indicate that 2% interest, compounded monthly, will be charged on any overdue amount.

Helka argues that the exchange of the invoices containing the contractual interest language is sufficient to establish a course of dealing that interest is collected by Helka. *Citing Capitol Converting Equipment v. LEP Transport*, 965 F.2d 391 (7th Cir. 1992). According to Helka, that the interest clause was not previously enforced does not preclude Helka from enforcing it now. Nothing in the record indicates a previously comparable situation between the parties (*i.e.*, over $200,000 worth of unpaid invoices), and Shine does not maintain that it did not have notice of the interest provision on the invoices.

However, that the interest provision may never have been previously enforced sheds some light on the course of dealing between these parties. The exchange of invoices containing the contractual interest language does not establish a course of dealing that the language was enforced. And the particular course of dealing with respect to the language may give particular meaning to the terms of the contract. Tiwari swears in his affidavit that to the best of his knowledge the interest provision was never enforced by Helka against Shine, and Helka has produced no evidence to contradict Tiwari's testimony on this point. Whether a course of dealing exists between parties to a transaction is a question of fact, *Capitol*, 965 F.2d at 395, and here it is a question of fact that precludes summary judgment on Helka's claim for interest. Accordingly, Helka's motion for summary judgment against Shine for pre-judgment and post-judgment interest is denied.

                ENTER:

                *[signature: James B. Zagel]*
                James B. Zagel
                United States District Judge

DATE: March 18, 2009